UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

R<small>ICHARD</small> B<small>RYANT</small>,

          Plaintiff,          Case No. 2:20-cv-217

v.                                  Honorable Paul L. Maloney

U<small>NKNOWN</small> T<small>HRELFALL</small> et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility.  Plaintiff sues Corrections Officers Unknown Threlfall and Unknown Escherich.

Plaintiff alleges that on November 1, 2019, he was hired as a laundry porter.  After being hired, Defendant Threlfall began to threaten Plaintiff with the loss of his job because he wanted someone else to have the position.  Plaintiff spoke to housing unit Counselor Thompson about Defendant Threlfall, but she merely told Plaintiff not to worry about it.  On March 19, 2020, Defendant Threlfall, who was not Plaintiff's supervisor, wrote a false negative work report on Plaintiff, seeking to have Plaintiff terminated.  Plaintiff claims that this was in retaliation for his prior complaint to Counselor Thompson.  Defendant Threlfall complained that Plaintiff had not completed the unit laundry prior to Defendant Threlfall's arrival on third shift.  Defendant Threlfall initially marked the box for "termination," and falsely asserted that Plaintiff had two prior write-ups in the unit logbook.  This was rejected by Counselor Thompson, who placed Plaintiff on a "30-day conditional." (ECF No. 1, PageID.5.)  Plaintiff filed a grievance on Defendant Threlfall, which he exhausted at each level.

Plaintiff states that it is a fact that prison officials are aware that laundry porters on every shift do some personal laundry as a "side hustle," and porters do not get disciplined for this behavior.  Plaintiff alleges that Defendant Threlfall fabricated negative write-ups on Plaintiff in the unit logbook on June 25, 2020, June 30, 2020, and July 4, 2020.  Defendant Escherich also wrote a negative work report on Plaintiff.  On July 15, 2020, Plaintiff was told by Defendant Escherich that he had been terminated from his job as a result of the write-ups.  Plaintiff states that Defendant Escherich conspired with Defendant Threlfall to deprive Plaintiff of his job.  Plaintiff claims that Defendant Escherich was not his immediate supervisor, and that second shift officers

are Plaintiff's immediate supervisors and should have been the ones to write up any negative reports. Plaintiff filed a step I grievance on July 15, 2020.

Plaintiff claims that Defendants engaged in a conspiracy to violate his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Due Process

Plaintiff appears to be claiming that Defendants violated his Fourteenth Amendment due process rights. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or

4

to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his prison job did not trigger a right to due process.

**IV.    Retaliation**

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Plaintiff states that after he was hired on November 1, 2019, Defendant Threlfall threatened to have Plaintiff fired because he wanted to place someone else in the job. Plaintiff complained to Counselor Thompson, who told Plaintiff not to worry about it. Four months later, on March 19, 2020, Defendant Threlfall wrote a false negative work report on Plaintiff. After this write up failed to result in Plaintiff's job termination, Defendant Threlfall wrote three more negative work reports on Plaintiff. Defendant Escherich also wrote a negative work report on Plaintiff. Plaintiff subsequently lost his job. Plaintiff's complaint implies that he did personal laundry as a "side hustle," but that this conduct would not normally result in a negative work report.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

5

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Therefore, Plaintiff's oral complaint to Counselor Thompson was protected conduct for purposes of a retaliation claim.

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The loss of a prison job is sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (a threat to have a prisoner moved

out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family were sufficiently adverse to be actionable); *Siggers-El v. Barlow,* 412 F.3d 693, 702 (6th Cir. 2005) (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) evidence suggested that the prisoners would likely have been reappointed to their jobs were it not for their complaints about the prison official;

Finally, the Court notes that temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

In this case, Defendant Threlfall told Plaintiff that he wanted to hire someone else for the position prior to Plaintiff ever making any complaints. In fact, this comment was the basis for Plaintiff's complaint to Counselor Thompson. Four months later, Plaintiff received the first

7

negative work report. Plaintiff states that because he was not immediately fired, he received other negative work reports.

Nothing in Plaintiff's complaint supports his assertion that Defendants' conduct was motivated by a desire to retaliate against him. The complaint and first negative work report were not even temporally proximate. No inference of retaliatory motive may be drawn from a four-month delay between protected conduct and adverse action. In addition, the fact that Defendants wanted to fire Plaintiff in order to give the job to another prisoner, while reprehensible if true, does not constitute a retaliatiory firing for purposes of the First Amendment. Therefore, Plaintiff's retaliaton claims are properly dismissed.

## V.     Conspiracy

Finally, Plaintiff claims that Defendants conspired to violated his constitutional rights when they had him fired from his prison job. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe discrete facts that occurred over a period of months involving the two Defendants. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on an attenuated inference from the mere fact that he received negative work reports from both Defendants. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Because Plaintiff's conspiracy claim is entirely conclusory, it is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   November 13, 2020                        /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge